**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

RODNEY A. TUCKER, SR.,

      **Plaintiff,**

    **v.**                                         **Civil Action No. 3:23cv823**

ALLAN NASH, *et al.*,

      **Defendants.**

## MEMORANDUM OPINION

Rodney A. Tucker, Sr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action is proceeding on Tucker's Second Amended Complaint. (ECF No. 28.) The matter is before the Court on the Second Motion to Dismiss, filed by the remaining Defendant, Lt. William Stembridge. (ECF No. 29.) For the reasons articulated below, the Second Motion to Dismiss will be GRANTED, and Tucker's claims will be DISMISSED.[2]

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court corrects the capitalization, punctuation, and spelling the quotations to Tucker's submissions. In order to avoid confusion, the Court omits the headings when quoting from the Court's October 16, 2025 Memorandum Opinion.

## I. Procedural History

By Memorandum Order entered on September 13, 2024, the Court directed Tucker to file a particularized complaint because, among other things, he failed to provide Defendant Stembridge with fair notice of the facts and legal basis upon which his liability rests. (ECF No. 11, at 1–2 (citations omitted).) Thereafter, Tucker filed his Particularized Complaint. (ECF No. 12.)

In his Particularized Complaint, Tucker stated:[3]

> Defendants denied Plaintiff his right to a fair trial by denying his 4th Amendment right as governed by the U.S. Constitution, illegal search and seizure. If Plaintiff was not deprived of his right to illegal search and seizure Plaintiff would never have been tried in a court of law because evidence was obtained illegally by Officer Stembridge and prosecuted falsely by Allan Nash['s] office, which proves through transcripts of suppression hearing on October 20, 2023.
> Officer Stembridge went on private property with no warrant, no traffic stop and after arresting Plaintiff went outside and went in a vehicle that was not linked to a crime and went inside a car on private property which he never asked permission or had access to and searched vehicle which was a violation of Plaintiff's rights under the 4th Amendment . . . .
> Allan Nash's office was knowledgeable of the illegal ground of which the evidence was obtained . . . . Plaintiff was not in a traffic stop was not involved in anything that warranted a search of the vehicle being Plaintiff was inside of residence. Vehicle was illegally towed creating the theory of the fruit of [the] poisonous tree theory, which is illegal under the 4th Amendment right to illegal search and seizure.

(ECF No. 12, at 1–5 (paragraph numbers omitted).)

By Memorandum Opinion and Order entered on October 16, 2025, in reviewing Defendant Stembridge's Motion to Dismiss the Court stated:

> Tucker's Particularized Complaint and his theory or theories of recovery are hardly a model of clarity. As best as the Court can discern, Tucker contends that he is entitled to relief on the following grounds:
> Claim One     Defendant Stembridge violated Tucker's rights under the Fourth Amendment when he searched someone's car on

---

[3] By Memorandum Order entered on May 6, 2025, the Court dismissed all of Tucker's claims against the other named Defendant, Allan Nash, on the grounds of prosecutorial immunity. (ECF No. 13.)

2

| | someone's property without a warrant and obtained evidence that incriminated Tucker in a crime.[4] |
|---|---|
| Claim Two | Defendant Stembridge violated Tucker's rights under the Fourth Amendment when he had a car towed. |

The Fourth Amendment "protects persons against unreasonable searches of 'their persons [and] houses' and thus . . . is a personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (alteration in original) ("[T]he Fourth Amendment protects people, not places." (citing *Katz v. United States*, 389 U.S. 347, 351 (1967))). Thus, "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 & n.2 (1978)). Moreover, the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law to understandings that are recognized and permitted by society." *Id.* The burden lies with Tucker to show that he has a reasonable expectation of privacy in the place searched. *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992) (citation omitted). He fails to do so. Tucker fails to allege any facts that suggest he had a privacy interest in the car that was searched or the property on which that car was located. Accordingly, Tucker's Fourth Amendment claims will be DISMISSED WITHOUT PREJUDICE.

The Motion to Dismiss (ECF No. 22) will be GRANTED. Tucker's claim will be DISMISSED WITHOUT PREJUDICE. Should Tucker wish to correct the deficiencies described above, he must file a proper amended complaint within thirty (30) days of the date of entry hereof. In the event Tucker fails to submit a proper amended complaint within that period, the Court will dismiss Tucker's claims and the action with prejudice.

(ECF No. 26, at 4–5 (alteration in original).)

On November 7, 2025, Tucker filed his Second Amended Complaint (ECF No. 28) and Defendant Stembridge file his Second Motion to Dismiss (ECF No. 29). Thereafter Tucker filed a Motion to Amend (ECF No. 33) and a Motion to Proceed with the Second Amended Complaint (ECF No. 36). Tucker's Motions (ECF Nos. 33, 36) will be GRANTED.

---

[4] To the extent Tucker suggests Defendant Stembridge violated his constitutional rights by subjecting him to a malicious prosecution, he fails to adequately articulate such a claim. *Brunson v. Stein*, 116 F.4th 301, 307 (4th Cir. 2024) (alteration in original) (emphasizing that "[o]ne *element* that must be *alleged* and *proved* in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994))), *cert. denied*, 145 S. Ct. 1169 (2025)

3

## II. Motion to Dismiss Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In

4

order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Allegation in the Second Amended Complaint

Tucker's Second Amended Complaint is not a significant improvement over Tucker's Particularized Complaint. Much of the Second Amended Complaint consists of conclusory allegations. To assist in the subsequent analysis, the Court highlights the most pertinent facts alleged by Tucker. Specifically, Tucker alleges:

Defendant Lt. Stembridge on November 18, 2022, violated Plaintiff's rights by denying Plaintiff a right to a fair trial by denying his 4th Amendment right as governed by the U.S. Constitution, illegal search and seizure. If Plaintiff would of never been tried in a court of law because evidence was obtained illegally by Officer Stembridge, which proves through transcripts of suppression hearing on October 20, 2023. On November 18, 2022, Officer Stembridge **went on private property with no warrant,** no traffic stop, and after arresting Plaintiff, went outside and went in a **vehicle on private property** as mentioned in *Collins v. Commonwealth,* U.S. Supreme Court 2018 and went inside and **searched vehicle without permission of the occupants of the house** or had access to during the encounter in the house with the defendant. Plaintiff was never involved in any traffic or traffic infraction, the vehicle was never involved in any crime or was reported in any action that required a search, being plaintiff was inside the residence. Commonwealth Office was knowledgeable of the illegal ground of which evidence was obtained. Vehicle was illegally **towed off private property that Plaintiff was visiting because he had family at residence.** Vehicle was used to illegally search, creating the theory of the fruit of the poisonous tree, which is illegal under the 4th Amendment right to illegal search and seizure. The place searched 108 S. Madison

St. is a **private**, not public residence and **the vehicle was not the property of Plaintiff** and Plaintiff was never involved in any infraction that would warrant[] said search, no reason for towing of vehicle off private property. I was properly and maliciously prosecuted because I have been denied my 4th Amendment rights.

If Defendant would of never deprived Plaintiff of his constitutional right to his 4th Amendment right, Plaintiff would not be obtained by law illegally and I believe Plaintiff would of never been subject of prosecution error or malicious prosecution . . . .

. . . .

I am incarcerated under false pretensions because of my 4th Amendment was violated by Officer Stembridge on November 18, 2022, when he illegally searched a vehicle at **my family home** without a warrant or probable cause such as a traffic stop. Plaintiff satisfied that he showed plausible actions as much as he can legally be responsible for because Plaintiff has no law experience.

(ECF No. 28, at 1–5.)

### IV. Analysis

Despite three opportunities to amend, Tucker's operative complaint remains remarkably light on facts. The burden lies with Tucker to show that he has a reasonable expectation of privacy in the place searched. *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992) (citation omitted). The place searched was a car located on private property. Other than the location of the vehicle, Tucker provides no facts suggesting he had a legitimate expectation of privacy in the vehicle. Tucker concedes that he did not own the vehicle and was not located in the vehicle at the time of the search. Apparently, material incriminating of Tucker was found in the vehicle. However, there is no suggestion that anyone associated with the vehicle gave Tucker permission to use the vehicle, much less leave illicit material in the vehicle.

Tucker, however, provides a few more facts regarding where the vehicle was found. The vehicle was parked on private property. Tucker at one point says the property was "his family home", (ECF No. 28, at 3), but clarifies that remark by stating he "was visiting because he had family at residence." (ECF No. 28, at 2.) The reasonable inference from these two remarks,

6

even read favorably to Tucker, is that Tucker did not reside at the house, but was merely visiting a family member who lived there.

The Fourth Amendment "protects persons against unreasonable searches of 'their persons [and] houses' and thus . . . is a personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (alteration in original) ("[T]he Fourth Amendment protects people, not places." (citing *Katz v. United States*, 389 U.S. 347, 351 (1967))). Thus, "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he [or she] personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 & n.2 (1978)). The Supreme Court has noted that "a person can have a legally sufficient interest in a place other than his [or her] own home so that the Fourth Amendment protects [them] from unreasonable governmental intrusion into that place." *Rakas*, 439 U.S. at 142 (citation omitted). "For a house guest to assert Fourth Amendment rights in another's home [or yard], the asserting party must show that he or she personally has an objectively reasonable expectation of privacy in the place at issue." *United States v. Quigley*, No. 3:23-CR-30022-RAL, 2023 WL 7321573, at *4 (D.S.D. Nov. 7, 2023) (citing *Kyllo v. United States*, 533 U.S. 27, 33 (2001); *United States v. Kuenstler*, 325 F.3d 1015, 1020 (8th Cir. 2003)). As a social guest of a family member of the residence, Tucker arguably had an objectively reasonable expectation of privacy in the *home* where the car was located. *See, e.g.*, *United States v. Green*, 106 F.4th 368, 376 (4th Cir. 2024) (citation omitted) (emphasizing that individual's "familial relationship with the homeowner in question" gave rise to a reasonable expectation of privacy). However, the area searched here was not the home, but a car located on property outside of the home.

7

"Under well-settled Fourth Amendment jurisprudence, the privacy expectation that one has in the home generally extends to the 'curtilage' of the home." *United States v. Maestas*, 639 F.3d 1032, 1036–37 (10th Cir. 2011) (citing *Kyllo v. United States*, 533 U.S. 27, 34 (2001); *Oliver v. United States*, 466 U.S. 170, 180 (1984); *Reeves v. Churchich*, 484 F.3d 1244, 1254 (10th Cir. 2007)).  The primary focus in determining the extent of the curtilage is "whether the area in question harbors those intimate activities associated with domestic life and the privacies of the home." *United States v. Dunn*, 480 U.S. 294, 301 n. 4 (1987).  To determine whether an area around a home is within the "curtilage," courts generally considers four factors: [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *United States v. Jackson*, 728 F.3d 367, 373 (4th Cir. 2013) (quoting *Dunn*, 480 U.S. at 301).

Despite his obligation to do so Tucker has advanced no facts to suggest that the area where the car was located was within the curtilage of the residence.  *See United States v. Coleman*, 923 F.3d 450, 456 (6th Cir. 2019) (applying *Dunn*'s factors, and concluding that petitioner's driveway wasn't curtilage when it was "sitting in front of the residence," "not enclosed by anything," and the "driveway was in fact shared with other families and other condo residents frequently walked past cars parked in front of condo units"); *Rieck v. Jensen*, 651 F.3d 1188, 1193 (10th Cir. 2011) ("[A] driveway abutting and clearly visible from a public [throughway] is not a suitable setting for intimate activities associated with a home."). *But* see *Collins v. Virginia*, 584 U.S. 586, 593–94 (2018) (concluding partially enclosed top portion of driveway of home, in which defendant's motorcycle was parked, was curtilage, for Fourth Amendment purposes).  "Using an area to park cars is not itself an 'intimate activit[y] associated

8

with domestic life and privacies of the home.'" *United States v. Hall*, No. 7:19-CR-75-FL-1, 2020 WL 4530469, at *3 (E.D.N.C. Aug. 6, 2020) (alteration in original) (quoting *United States v. Jenkins*, 426 F. Supp. 2d 336, 339 (E.D.N.C. 2006)). Because Tucker has failed to plead facts that plausibly suggest he had a reasonable expectation of privacy in the area searched, the Second Motion to Dismiss (ECF No. 29) will be GRANTED.

### V. Conclusion

Tucker's Motion to Amend (ECF No. 33) and Motion to Proceed with the Amended Complaint (ECF No. 36) will be GRANTED. The Motion to Dismiss will be GRANTED. The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g). The Clerk will be DIRECTED to enter a final appealable Judgment in a Civil Case in favor of Defendant as a separate entry on the docket.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 6/5/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

9